AMERICAN RIPENER COMPANY, INC., Plaintiff v. MURIEL K. OFFERMAN, SECRETARY OF REVENUE OF THE STATE OF NORTH CAROLINA, Defendant

No. COA00–1346

(Filed 6 November 2001)

**Taxation–sales–statutory exemption–plant growth regulators**

The trial court correctly granted summary judgment for plaintiff in an action seeking a sales tax refund under the N.C.G.S. § 105-164.13(2a)d exemption for plant growth regulators or stim-

ulators. The determination of whether plaintiff's sales of plant regulator gas and generators fell under the statutory exemption depends solely on statutory interpretation and the issue was thus properly resolved by the trial court. Plaintiff's president provided evidence by affidavit that the company was in the business of manufacturing and selling a plant growth regulator and stimulator and generators for its release, and the court could not consider defendant's arguments concerning the purpose for which defendant sold the product because the record contained no evidence as to whom and for what purpose the product was sold. Finally, defendant's reliance on a definition which allegedly excluded machinery such as generators was misplaced; moreover, plaintiff provided uncontradicted evidence that the generators are used to control the release of the product and thus to regulate the speed of ripening of fruits and vegetables.

Appeal by defendant from order and judgment entered 9 August 2000 by Judge Marvin K. Gray in Mecklenburg County Superior Court. Heard in the Court of Appeals 18 September 2001.

*Newitt & Bruny, by John G. Newitt, Jr., and Roger H. Bruny, for plaintiff-appellee.*

*Attorney General Michael F. Easley, by Associate Attorney General David J. Adinolfi, II, for the State.*

MARTIN, Judge.

Defendant Secretary of Revenue of the State of North Carolina appeals from a summary judgment granted in favor of plaintiff American Ripener Company, Inc., requiring defendant to refund plaintiff certain taxes assessed for the period 1 January 1990 through 30 November 1995.

Plaintiff is in the business of manufacturing and selling ethylene concentrate, a plant growth regulator or stimulator which controls the speed of the ripening of fruit and vegetables. Plaintiff also manufactures, sells, and leases generators that are utilized to control the release of the ethylene gas. For the period from 1 January 1990 through 30 November 1995, defendant assessed plaintiff $10,821.54 in sales tax for the sale of ethylene, $8,020.31 in use tax for its generators, $810.81 in use tax for the replacement parts for its generators, less a credit of $259.44, plus $8,442.41 in interest, for a total of $27,835.63.

Plaintiff appealed the assessment in writing and received a hearing before the Assistant Secretary for Legal and Financial Services for the North Carolina Department of Revenue who affirmed defendant's assessment. Subsequently, plaintiff petitioned the North Carolina Tax Review Board to review the Assistant Secretary's decision. By decision rendered 3 March 1998, the Tax Review Board affirmed. Pursuant to G.S. §§ 105-241.4 and 105-267, plaintiff paid the $27,835.63 tax and interest on 1 April 1998 under protest and, by letter of the same date, demanded a refund of the tax from defendant. Upon defendant's failure to refund the tax within 90 days after 1 April 1998, plaintiff instituted this action pursuant to G.S. §§ 105-241.4 and 105-267 to recover the tax.

Defendant moved for summary judgment without supporting affidavits. Plaintiff filed a response to the motion for summary judgment and a cross motion for summary judgment with supporting affidavits. By judgment dated 9 August 2000, the trial court concluded that there was no genuine issue as to any material fact, granted plaintiff's motion for summary judgment, and ordered defendant to refund to plaintiff the sum of $27,835.63 with interest at the rate of 8% per annum from 1 April 1998 until paid and the costs of the action. Defendant appeals.

---

Defendant Secretary of Revenue assigns error to the denial of her motion for summary judgment and to the granting of plaintiff's cross motion for summary judgment. We affirm.

Summary judgment is appropriate where "the pleadings depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that any party is entitled to a judgment as a matter of law." N.C. Gen. Stat. § 1A-1, Rule 56(c) (2000). According to Rule 56(e) of the North Carolina Rules of Civil Procedure:

> . . .[w]hen a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If he does not so respond, summary judgment, if appropriate, shall be entered against him.

N.C. Gen. Stat. § 1A-1, Rule 56(e) (2000). However, if the adverse party fails to respond, that does not automatically mean that sum-

mary judgment is appropriate. *Perry v. Aycock*, 68 N.C. App. 705, 315 S.E.2d 791 (1984). "The moving party must still succeed on the strength of its evidence, and when that evidence contains material contradictions or leaves questions of credibility unanswered, the movant has failed to satisfy its burden." *Id.* at 707, 315 S.E.2d at 793-94. Additionally, the evidence must be viewed in the light most favorable to the non-movant. *Murray v. Nationwide Mut. Ins. Co.*, 123 N.C. App. 1, 472 S.E.2d 358 (1996), *disc. review denied*, 345 N.C. 344, 483 S.E.2d 172-73 (1997).

Two statutes are applicable to the audit period at issue in this case, 1 January 1990 through 30 November 1995. G.S. § 105-164.13(2) was in effect from 1 January 1990 through 31 July 1995 and G.S. § 105-164.13(2a)d was in effect from 1 August 1995 through 30 November 1995. Until 1 August 1995, G.S. § 105-164.13(2) provided:

> The sale at retail, the use, storage or consumption in this State of the following tangible personal property is specifically exempted from the tax imposed by this Article:

> (2) . . . plant growth inhibitors, regulators, or stimulators for agriculture including systemic and contact or other sucker control agents for tobacco and other crops.

G.S. § 105-164.13(2a)d, applicable for the last four months of the audit period provides:

> The sale at retail, the use, storage or consumption in this State of the following tangible personal property is specifically exempted from the tax imposed by this Article:

> (2a) Any of the following when purchased for use in the commercial production of animals or plants, as appropriate:

>> d. Plant growth inhibitors, regulators, stimulators, including systemic and contact or other sucker control agents for tobacco and other crops.

The determination of whether plaintiff's sales of ethylene gas, use of generators, and use of replacement parts for its generators falls under an exemption for the retail sales and use tax depends solely on statutory interpretation which is a matter of law. *See Taylor Home of Charlotte v. City of Charlotte*, 116 N.C. App. 188, 447 S.E.2d 438, *disc. review denied*, 338 N.C. 524, 453 S.E.2d 170 (1994). Therefore, this issue was appropriately resolved by the trial court.

In her answer, defendant admitted that plaintiff "is engaged in the manufacture of ethylene concentrate and generators [and that] [e]thylene is a plant growth regulator or stimulator which controls the speed of the ripening of fruit and vegetables." Plaintiff's president provided evidence by affidavit in support of plaintiff's motion for summary judgment, including the following:

> 5. That the Plaintiff, American Ripener Company, Inc., is in the business of manufacturing and selling ethylene concentrate and manufacturing, selling and leasing generators.
>
> 6. That ethylene is a plant growth regulator or stimulator which controls the speed of the ripening of fruit and vegetables.
>
> 7. That the generators are utilized to control the release of the ethylene gas which thus regulates the speed of the ripening of the fruits and vegetables and are plant growth regulators and stimulators.

Since "plant growth inhibitors, regulators, or stimulators" are "specifically exempted" under G.S. §§ 105-164.13(2)and 105-164.13(2a)d, plaintiff contends that the court was correct in granting its motion for summary judgment.

Defendant argues, however, that plaintiff's sale of the ethylene was not for a purpose falling under the exemption statutes. In order for the sale of ethylene to be exempted under G.S. § 105-164.13(2), the ethylene must be sold "for agriculture," and under G.S. § 105-164.13(2a)d, the ethylene must be sold "for the commercial production of animals or plants." The record, however, contains no evidence as to whom and for what purpose the ethylene was being sold by plaintiff and to rebut plaintiff's showing that the sale of the gas and the use of the generators were exempt. Thus, this Court is unable to consider defendant's arguments concerning the purpose for which plaintiff sold the ethylene gas as defendant produced no evidence to support her argument. See N.C.R. App. P. 9(a). We therefore conclude that plaintiff has carried its burden by showing that there was no genuine issue as to any material fact and that its sale of ethylene gas fell under the exemption statutes.

Defendant also argues that plaintiff is not exempt from any tax under G.S. §§ 105-164.13(2) and 105-164.13(2a)d with respect to its purchase of generator parts. However, the affidavit of plaintiff's president asserts that the generators were utilized to control the release of ethylene gas and therefore they should be considered plant growth

regulators and stimulators under the sales and use statutes. Thus, plaintiff argues that it is entitled to recover the $8,020.31 in use tax for its generators and $810.81 in use tax for the replacement parts for its generators.

Defendant relies on the definition of "plant regulator" provided in G.S. § 143-460(32) which states:

> The term "plant regulator" means any substance or mixture of substances, intended through physiological action, for accelerating or retarding the rate of growth or rate of maturation, or for otherwise altering the behavior of ornamental or crop plants or the produce thereof, but shall not include substances to the extent that they are intended as plant nutrients, trace elements, nutritional chemicals, plant inoculants, and soil amendments.

Defendant points out that this definition does not include hardware or machinery such as generators but is limited to chemical substances. Therefore, defendant argues that the generators at issue are not exempted under the applicable statutes. However, defendant's reliance on this definition is misplaced since that definition is confined to Article 52, North Carolina Pesticide Law of 1971, G.S. § 143-434 *et seq.*

Defendant additionally argues that plaintiff's specific use of the generator parts in question is not exempted under the retail sales and use statutes. However, in the absence of evidence in the record as to the purpose for which plaintiff used the generator parts, we are unable to consider defendant's arguments with respect thereto. *See* N.C.R. App. P. 9(a). Plaintiff provided uncontradicted evidence that the generators are used to control the release of the ethylene gas and to regulate the speed of the ripening of fruits and vegetables and, therefore, are plant growth regulators or stimulators. Since "plant growth inhibitors, regulators, or stimulators" are specifically exempt from the North Carolina Sales and Use Tax pursuant to G.S. §§ 105-164.13(2) and 105-164.13(2a)d, plaintiff's motion for summary judgment was properly granted.

Affirmed.

Judges WALKER and TYSON concur.